June B. HERRINGTON,
Plaintiff-Appellee,

v.

Hazel H. BOATRIGHT, Armco Steel Corporation, Union Central Life Insurance Company, Equitable Life Assurance Society of the United States, Henry M. Beaty, Jr., Administrator, Defendants-Appellants.

Court of Appeals of Tennessee,
Western Section.

Feb. 25, 1982.

Rehearing Denied March 9, 1982.

Permission to Appeal Denied by Supreme Court June 1, 1982.

782

Sam F. Cole, Jr., Lane, Hansom & Cole, Memphis, for defendant-appellant Hazel H. Boatright.

Henry M. Beaty, Jr., Memphis, Administrator, pro se.

McDonald Yawn, Luck, Yawn & Smith, Memphis, for plaintiff-appellee.

MATHERNE, Judge.

A divorced wife sues to enforce a property settlement agreement incorporated in a final divorce decree.

The plaintiff June B. Herrington and Malcolm A. Herrington were married in Greenwood, Mississippi on April 6, 1947. After 27 years of marriage, the parties separated and entered into a written Separation Agreement dated August 23, 1974, which agreement was incorporated in a separate maintenance decree awarded the wife by the Common Pleas Court, Butler County, Ohio. The parties did not reconcile, and Malcolm A. Herrington caused to be entered a final decree of divorce on June 15, 1978, which final decree, at the request of Malcolm A. Herrington, incorporated therein the Property Settlement Agreement "as final disposition of all property matters of the within cause."

After the entry of the final divorce decree, Malcolm E. Herrington became a resident of Shelby County, Tennessee, where he lived until his death on January 1, 1979. The plaintiff is a resident of Nassau County, New York, and brings this lawsuit to enforce that portion of the property settlement which relates to insurance on the life of Malcolm E. Herrington. The property settlement agreement provides;

> 5) *Insurance*: Husband shall keep his life insurance in effect and shall keep Wife as the beneficiary so long as they are married or if they should divorce, so long as she is not remarried.

At the time of the property settlement agreement, and at the time of his death, Malcolm E. Herrington possessed policy No. 12531 issued by Equitable Life Assurance Society in the face amount of $25,000; policy No. G978A issued by the Union Central Life Ins. Co. in the face amount of $28,000; and Veterans Administration policy V-39-89-70 in the face amount of $10,000. Up until about 74 days prior to his death, Malcolm E. Herrington paid the premiums on these policies and the divorced wife remained the named beneficiary in each policy. However, on December 6, 1978, he executed change of beneficiary forms on the Equitable and Union Central policies, naming as beneficiary in each policy his sister, the defendant Hazel H. Boatright. On December 13, 1978, he took the same action with regard to the Veterans Administration policy. Hazel H. Boatright never paid a premium on any policy, neither did she give any consideration in exchange for naming her as beneficiary under each policy. The divorced wife has not remarried.

Equitable and Union Central have paid the proceeds from their policies in to the chancery court pending this litigation. The Veterans Administration paid the proceeds of its policy to the named beneficiary Hazel H. Boatright, but she has paid that amount in to the chancery court pending this litigation. The only defendant claiming an interest in the policies is Hazel H. Boatright.

The chancellor held that Malcolm E. Herrington violated the divorce decree as entered in the Ohio court, and declared the divorced wife to be the owner of the proceeds of the policies. The chancellor held that Hazel H. Boatright held the proceeds of the Veterans Administration policy as constructive trustee for the plaintiff.

The defendant Hazel H. Boatright appeals, insisting that (1) the plaintiff failed to state or prove a cause of action against her; (2) the plaintiff was guilty of laches by failing to notify the insurors of her claim to the policies; (3) the plaintiff is not entitled

to the proceeds of the policies; and (4) only the Ohio court has jurisdiction to enforce its decree.

■ We note that section 1 of article IV of the Constitution of the United States provides that:

Full faith and credit shall be given in each State to the Judicial Proceedings of every other State.

The principle of comity has long been applied in this state to foreign divorce decrees. See *Dickson v. Dickson's Heirs*, (1826) 9 Tenn. 110. We hold that the chancellor correctly enforced the property settlement provision as set out in the divorce decree of the Ohio court. *Goodrich v. Massachusetts Mutual Life Ins. Co.*, (1951), 34 Tenn.App. 516, 240 S.W.2d 263.

■ Where the right to change the beneficiary has been reserved to the insured, the beneficiary named in the policy has a mere expectancy and has no vested right or interest in the policy. However, where a divorce decree requires the husband to keep a life insurance policy in effect and denies him the right to change the beneficiary, then the wife as the named beneficiary has a vested interest in the policy. *Goodrich, supra*. Should the husband then attempt to change the beneficiary, the wife may assert her vested right.

■ The defendant argues that the property settlement agreement is vague and unenforceable because it does not refer to specific policies of insurance. This argument is totally defective because the normal meaning of the words "shall keep his life insurance in effect" pertains to all his life insurance in effect at that time and does not require a listing of the policies by company, number and amount. The defendant also argues that group life insurance differs from ordinary life insurance. We can not follow this insistence to any degree where the only issue is who shall receive the proceeds of the two group policies issued by Equitable and Union Central.

We, therefore, affirm the chancellor in his holding that, under the terms of the divorce decree, the proceeds from the Equi-table Assurance Society policy and the Union Central policy belong to the plaintiff June B. Herrington, the ex-wife of the deceased, Malcolm A. Herrington.

■ The Veterans Administration policy, however, involves very different principles of law and the proceeds thereof are not necessarily payable as are proceeds from a private insurance policy. This policy is a National Service Life Insurance (NSLI) policy with the United States Government as the insurer. Policies of NSLI are contracts of the United States and possess the same legal incidents as other government contracts, and the validity and construction of such policies present questions of federal law. *Woodward v. United States*, 167 F.2d 774 (1948).

Cases dealing with change of beneficiary in private insurance policies are of little, if any, value as authority for cases arising out of an interpretation of an NSLI policy. The reason being that a war risk insurance policy is a contract completely statutory in basis, and that the rights and duties of the parties stem not from the rules which govern private life insurance, but from statutes and regulations passed expressly for war risk insurance. 2 A.L.R.2d at page 492, annotation to *Mitchell v. United States*, (5 Cir. 1948) 165 F.2d 758.

In *Wissner v. Wissner*, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950), the husband and wife were residents of California. The husband took out a NSLI policy, naming the wife as beneficiary. Later, he became estranged from his wife, and changed the beneficiary to his mother. Upon the husband's death the wife argued that the policy was community property and she was entitled to one-half of the proceeds. The trial court so held, and the appellate court affirmed. On grant of certiorari the Supreme Court reversed, holding, in part, as follows:

The controlling section of the Act provides that the insured 'shall have the right to designate the beneficiary or beneficiaries of the insurance [within a designated class], * * * and shall * * * at all times have the right to change the bene-

ficiary or beneficiaries * * *.' 38 U.S.C. § 802(g), 38 U.S.C.A. § 802(g). Thus Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other. Pursuant to the congressional command, the Government contracted to pay the insurance to the insured's choice. He chose his mother. It is plain to us that the judgment of the lower court, as to one-half of the proceeds, substitutes the widow for the mother, who was the beneficiary Congress directed shall receive the insurance money. We do not share appellee's discovery of congressional purpose that widows in community property states participate in the payments under the policy, contrary to the express direction of the insured. Whether directed at the very money received from the Government or an equivalent amount, the judgment below nullifies the soldier's choice and frustrates the deliberate purpose of Congress. It cannot stand.

See also *Pack v. United States*, (9 Cir. 1949) 176 F.2d 770.

It is well established that questions respecting the proper beneficiaries under NSLI policies are governed by federal law rather than state divorce law or state court divorce decrees. *United States v. Donall*, (6th Cir. 1972) 466 F.2d 1246. In *Donall*, *supra*, an insured husband made his first wife the principal beneficiary under a NSLI policy. After a divorce wherein the decree provided that all rights of either party in and to the proceeds of any life insurance policies on the life of the other party "are hereby cut off and at an end," the husband remarried. The husband did not change the principal beneficiary, and upon his death the court held that the first wife as the named principal beneficiary would take the proceeds of the policy as against the claims of his mother as the named contingent beneficiary and his second wife as claimant. The *Donall* court based its ruling upon *Wissner v. Wissner, supra*.

We also note the case of *Dyke v. Dyke*, (6th Cir. 1955) 227 F.2d 461, wherein a Tennessee statute was interposed to deny NSLI policy proceeds to the named beneficiary. There the insured originally named his mother as the principal beneficiary. He was later declared *non compos mentis* by a state court and committed to an institution. After a short confinement he was released, found employment and acted normally, however, no court order was entered declaring him to be competent. After his release from the hospital, the insured named his wife as the principal beneficiary under the policy. The insured died and the contest was between the mother and the wife for the proceeds of the policy. The court found as a fact that the insured was mentally competent at the time he changed the beneficiary. The mother argued, however, that under state law "an adjudication of insanity 'is conclusive evidence, as a matter of law, of a continuation of that status until the person adjudged insane has subsequently been declared of sound mind by a decree entered pursuant to the provisions'" of certain Tennessee statutes. In dealing with this argument the court stated:

> ... But the [trial] judge asserted that this decision established a Tennessee rule of property; that a rule of property under state law cannot affect the disposition of insurance benefits arising under federal law; that National Service Life Insurance policies are contracts of the United States and possess the same legal incidents as other government contracts; and that their terms must be construed by federal rather than by state law. He reasoned that, if by a rule of property a state could restrict the agreement in a National Service Life Insurance policy to pay death benefits to a named beneficiary, or the right to change from one beneficiary to another, state power would supercede federal power. Such result would not be in conformity with recognized principles of law as determined in numerous federal decisions. We think Judge Taylor was clearly right. He adhered to the principles of the federal decisions.

The court held that the widow as the named beneficiary would prevail.

The issue was probably most pointedly met in the case of *Hoffman v. United States*, (9th Cir. 1968) 391 F.2d 195, wherein the insured under two NSLI policies, naming his wife as beneficiary, was granted a divorce by a decree which provided that the insured would at all times keep and maintain his divorced wife as the sole beneficiary under those policies. Later the insured changed the beneficiary. Upon the death of the insured the question was:

> Does a state court have the power to effectively require an unwilling veteran to maintain his former wife as beneficiary on his National Service Life Insurance policies?

The court held that a state court does not possess that power, basing its decision on 38 U.S.C. § 717(a), *Wissner v. Wissner, supra,* and the Supremacy Clause of the federal constitution. See also *Baratta and Baratta,* (1974), 18 Or.App. 261, 524 P.2d 1233; *Heifner v. Soderstrom,* (N.D.Iowa 1955) 134 F.Supp. 174.

It has also been held that notwithstanding any provision to the contrary in a separation agreement, the insured under a NSLI policy has the right to change beneficiaries under the policy up to the time of his death. *Berk v. United States,* (E.D., N.Y. 1969) 294 F.Supp. 578; *Eldin v. United States,* (S.D., Ill.1957) 157 F.Supp. 34; *Fleming v. Smith,* (1964) 64 Wash.2d 181, 390 P.2d 990; *Williams v. Williams,* (1961) 255 N.C. 315, 121 S.E.2d 536; *Kauffman v.*

*Kauffman,* (Cal.App.1949) 93 Cal.App.2d 808, 210 P.2d 29; *McCollum v. Sieben,* 211 F.2d 708 (1954).

■ Under the authorities herein cited we hold that the defendant Hazel H. Boatright as the named beneficiary in the NSLI policy on the life of Malcolm A. Herrington is entitled to the proceeds of that policy. The chancellor is reversed in his holding to the contrary, and his final judgment is modified to that extent.

The cost in this court is adjudged one-half against June B. Herrington and one-half against Hazel H. Boatright for which execution may issue, if necessary.

NEARN and TOMLIN, JJ., concur.

ON PETITION TO REHEAR

The defendant-appellant Hazel Boatright has filed a Petition to Rehear in which no matter is raised that was not considered by the court in rendering its original Opinion in this cause. The Petition to Rehear is, accordingly, overruled at the cost of the petitioner.